UB v MUG (2024 NY Slip Op 51113(U))

[*1]

UB v MUG

2024 NY Slip Op 51113(U)

Decided on August 28, 2024

Supreme Court, Richmond County

Castorina, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 28, 2024
Supreme Court, Richmond County

UB, Plaintiff,

against
MUG, Defendant.

Index No. 50173/2023

Attorney for the Plaintiff 
Lloyd D. Thompson, Esq. 
2110 D Clove Rd
Staten Island, NY 10305 
Phone: (718) 447-3600 
E-mail: esqcop&commat;aol.com
Attorney for the Plaintiff - (Parenting Time and Custody Only)
Michele Adele Sileo, Esq.
120 Ramona Avenue
Staten Island, NY 10312 
Phone: (646) 523-0368 
E-mail: Michele.Sileo&commat;michelesileoesq.com
Attorney for the Defendant
Miouly E. Pongnon, Esq.
2005 5th Ave Ste 1
New York, NY 10035 
Phone: (212) 722-8141 
E-mail: mioulypongnon&commat;gmail.com
Attorney for the Child
Melissa Johanna Rutigliano, Esq.
400 Saint Marks Pl
Staten Island, NY 10301 
Phone: (949) 484-9884 E-mail: murgolo.rutigliano&commat;gmail.com

Ronald Castorina Jr., J.

I. Procedural History
Plaintiff UB and Defendant MUG were married on December 3, 2014, in Gujrat, Pakistan. (NY St Cts Filing [NYSCEF] Doc Nos. 1). There is one child of the marriage, to wit: ZAK, born XXX XX, 2017. (see id). The Plaintiff Wife commenced this action for divorce against Defendant Husband by summons and verified complaint on July 17, 2023. (see id). Defendant filed an answer with counterclaims on August 15, 2023. (NY St Cts Filing [NYSCEF] Doc Nos. 8). During the pendency of there was in effect a full stay away temporary Order of Protection issued by the Richmond County Family Court in favor of the Plaintiff and the Child and against the Defendant.
On September 1, 2023, Defendant by counsel filed Motion Sequence No. 001 by Order to Show Cause seeking a writ of habeas corpus seeking production of the child and custody of said child. Plaintiff, proceeding pro se, filed Motion Sequence No. 002 by Notice of Motion seeking to proceed as a poor person.
The Court granted Plaintiff's motion to proceed as a poor person on September 8, 2023, (NY St Cts Filing [NYSCEF] Doc Nos. 19), and appointed counsel for the Plaintiff pursuant to Judiciary Law § 35 [8] for addressing issues of parenting-time and custody. (NY St Cts Filing [NYSCEF] Doc Nos. 20). The Court further appointed an attorney for the child pursuant to Judiciary Law § 35 [8] (NY St Cts Filing [NYSCEF] Doc Nos. 23) and Ordered the Administration for Children's Services to conduct a Court Ordered Investigation into allegations of domestic violence by the Defendant against the Plaintiff and the child. (NY St Cts Filing [NYSCEF] Doc Nos. 22).
On September 14, 2023, Motion Sequence No. 001 was resolved, and a Writ of Habeas Corpus was issued to produce the child before the Court and the deposit of the child's passport with the Court. (NY St Cts Filing [NYSCEF] Doc Nos. 27). On September 18, 2023, all parties appeared before the Court and entered into a consent order granting the Plaintiff temporary residential custody of the child, pendente lite, and granted the Defendant parenting-time, pendente lite, via a fifteen-minute telephone call with the child on Mondays, Wednesdays, and Fridays (NY St Cts Filing [NYSCEF] Doc Nos. 30). On further consent a child support, pendente lite, Order was issued Ordering the Defendant to pay the Plaintiff child support in the amount of $150.00 per week (NY St Cts Filing [NYSCEF] Doc Nos. 31) to be paid through the Support Collection Unit. (NY St Cts Filing [NYSCEF] Doc Nos. 32). The Court further appointed a forensic evaluator in the matter. (NY St Cts Filing [NYSCEF] Doc Nos. 33).
On October 4, 2023, due to the limitations placed on Plaintiff's appointed counsel by the constraints of the Judiciary Law § 35, the Court on its own motion imputed an income to the Defendant sufficient to warrant an award to the Plaintiff of interim counsel fees to be paid by the Defendant to the Plaintiff in the amount of $5,000.00, pendente lite, subject to reallocation at trial. (NY St Cts Filing [NYSCEF] Doc Nos. 41). Defendant filed Motion Sequence No. 004 by [*2]Notice of Motion, seeking to vacate the counsel fee award on October 11, 2023. (NY St Cts Filing [NYSCEF] Doc Nos. 42). On November 8, 2023, Defendant's motion was granted and the interim counsel fee award to the Plaintiff was modified to include a payment schedule for the Defendant. (NY St Cts Filing [NYSCEF] Doc Nos. 51).
On December 4, 2023, the Court appointed Aurora Counseling Services to provide therapeutic services to the child with the goal of reunification if counselor determines that such therapy would be beneficial. (NY St Cts Filing [NYSCEF] Doc Nos. 54).
A preliminary conference was held on December 18, 2023, and an order was issued on consent that Plaintiff would be granted a divorce pursuant to Domestic Relation Law § 170 [7] Irretrievable Breakdown, after the resolution of the ancillary issues. (NY St Cts Filing [NYSCEF] Doc Nos. 57).
Trial commenced on June 3, 2024, and concluded on June 5, 2024. The Court heard testimony from three witnesses the Plaintiff; the Defendant; and the Defendant's sister, KG. The parties' marriage certificate was submitted by the Defendant via NYSCEF document number 81 on June 2, 2024. Various financial documents were submitted by the Defendant via NYSCEF document numbers 82-85 on June 2, 2024. Defendant further submitted his 2023 United States Tax Return and his New York State Tax Return via NYSCEF document number 86 on June 3, 2024. Plaintiff submitted an affirmation of attorney fees via NYSCEF document number 90 on June 9, 2024.
This is a Decision and Order after trial.
II. Facts
Prior to testimony on June 5, 2024, Plaintiff moved for summary judgment as a matter of law on the issue of custody. There is pending a full stay away Temporary Order of Protection on docket # O-03065-23 issued by the Family Court of Richmond County against the Defendant and on behalf of the Plaintiff and the child, ZAK. (tr at 4-5 [June 5, 2024]). The issue of custody and parenting-time is decided as a matter of law. Generally, if a Court order of protection bars all contact between a parent and a child, the parent may not obtain custody or visitation unless the order of protection is vacated or modified in the issuing Court. (see Matter of Brianna L. (Marie A.), 103 AD3d 181 [2d Dept 2012]). Accordingly, the Court resolved the issue of custody Ordering that Plaintiff shall be the sole custodial and residential primary parent. (tr 9, lines 14-20 [June 5, 2024]).
The issues outstanding for the trial court to decide are as follows: (a) equitable distribution of the Defendant's now liquidated Fidelity 401(k) account; (b) imputation of income to the Defendant from members of his household; (c) child support for the child, ZAK; and (d) counsel fees.
There is no controversy as to the following facts (1) the parties were married on December 3, 2014 (NY St Cts Filing [NYSCEF] Doc Nos. 57; 81); (2) there is one child of the marriage, ZAK, born XXX XX, 2017 (NY St Cts Filing [NYSCEF] Doc No. 57); (3) commencement date of the action is March 28, 2023 (NY St Cts Filing [NYSCEF] Doc Nos. 1); and (4) the Plaintiff shall take the divorce on the grounds of irretrievable breakdown of the marriage (NY St Cts Filing [NYSCEF] Doc Nos. 57).
Sole custodial and residential custody of the child of the marriage, ZAK, born XXX XX, 2017, has been granted to the Plaintiff as a matter of law. (see Matter of Brianna L. (Marie A.), [*3]103 AD3d 181 [2d Dept 2012]).
III. Trial
The trial of this action commenced on June 3, 2024, and concluded on June 5, 2024. Defendant testified that at the commencement of this action he had a 401(k) Fidelity account with a balance of $3,500.00. (tr at 12-13 [June 5, 2024]). Defendant testified that he liquidated this account in October 2023 and used the funds to pay the interim counsel fees Order, pendente lite. (tr at 12, lines 16-24 [June 5, 2024]). Defendant testified that at the commencement of this action he had a Chase checking account with a balance of $1,500.00 and that the balance was now approximately $600.00. (tr at 13, lines 5-12 [June 5, 2024]).
Defendant testified that he paid Plaintiff child support only once in the amount of $300.00. (tr at 13-14 [June 5, 2024]). Defendant further testified that he has worked for the New York City Department of Education for six years and his present income is $19,000.00 per year. (see id). Defendant testified that because of medical issues, he is limited to working 25 hours per week. (tr at 45 [June 5, 2024]).
Defendant testified that Plaintiff had a bank account at commencement with an alleged balance of $17,000.00, (tr at 17, lines 15-19 [June 5, 2024]) but in later testimony clarified that he did not know what she had in her bank account testifying "I don't know what's in her bank account." (tr at 19, lines 16-17 [June 5, 2024]).
Defendant further testified that Plaintiff earned $17,000.00 in 2022 testifying,
Q. How did you come to the conclusion that she had earned $17,000.00?
A. She sent me a picture of her tax. She filed independently that year.
Q. When you say her tax, you're saying her tax return?
A. Yes.
Q. And for which year are you saying?
A. 2022.
Q. And you saw $17,000 on that tax return?
A. Yes.
Q. Picture?
A. Yes. (tr at 20-21 [June 5, 2024]).
Defendant testified that he paid his lawyer $5,000.00 (tr at 41, lines 5-21 [June 5, 2024]). When questioned whether anyone else paid his attorney on his behalf, Defendant testified, "Some. Yeah, my brother-in-law helped me and my brother helped me pay her." (tr at 41, lines 24-25 [June 5, 2024]).
THE COURT: How much have they paid her?
THE WITNESS: I don't remember,
THE COURT: More than 5,000?
THE WITNESS: No.
THE COURT: More than 10,000?
THE WITNESS: No.
THE COURT: Less than 10,000?
THE WITNESS: Yes.
THE COURT: How much?
THE WITNESS: I don't remember. I have it written on paper. But I don't remember.
THE COURT: Who paid your attorney on your behalf?
THE WITNESS: I paid some of the money and my brother-in-law paid some of the money and my brother paid some of the money.
THE COURT: Your brother-in-law and your brother?
THE WITNESS: Yes.
THE COURT: But you don't know or you can't say right now how much they paid your attorney?
THE WITNESS: I don't remember, yes.
THE COURT: Fine. Ms. Pongnon, how much have you received?
MS. PONGNON: I received altogether $6,500 to represent MUG in this action and in the Family Court proceeding. I have not received anything more. (tr at 42, lines 1-25 [June 5, 2024]).
Plaintiff testified that as of the date of commencement she had $7,000.00 in her separate bank account. (tr at 30, lines 8-10 [June 5, 2024]). Plaintiff contends that from December 2023 through trial, Plaintiff received no support from the Defendant for expenses relating to the child. (tr at 31-32 [June 5, 2024]).
Plaintiff testified that she earns a salary of approximately $600.00 per month. (tr at 34, lines 20-25 [June 5, 2024]). Plaintiff further testified,
A. I get cash assistance, food stamps $300 every month. And like I said, I earn [$150.00] week — per week. And like I said, I get food stamp for food. And in addition to that, my brother sends me every month a thousand dollars.
Q. Thank you, UB. How long has your brother been sending you that amount, UB?
A. Since the case started.
Q. So is that correct since July 2023 you've been receiving from 800 to a thousand a month from your brother?
A. Yes. (tr at 35, lines 16-25 [June 5, 2024]).
Defendant's sister KG testified that she lives in the same residence with the Defendant, which is a legal two-family, but with three separate floors and entrances making it, in effect three separate units. (tr at 55, lines 11-13 [June 5, 2024]). Defendant's father owns the Defendant's home. (tr at 56, lines 12-15 [June 5, 2024]). KG maintained that other than Defendant having allegedly purchased the child a winter coat, he was unable to provide any other support for the child. (tr at 57, lines 2-20 [June 5, 2024]).
KG contended that she contributed about $500 to pay Defendant's counsel retainer that he later paid back. (tr at 58, lines 3-7 [June 5, 2024]). KG further contended that Defendant has to pay his brother, Uzmah, back the $6,000.00 that he has provided for his counsel's retainer. (tr at 59, lines 13-21 [June 5, 2024]).
KG was questioned regarding the need for support for the child.
THE COURT: And have you discussed any contribution toward the child support of ZAK?
THE WITNESS: We have not gotten to that point because first we are trying to, you know, we're looking forward to some visitation rights so that he can start meeting him [*4]and based upon his need if he needs to, yes, we are there for him. Even when he was living with us, he was free to go to all floors. He would go to anyone's house and eat any food they have, if he didn't like food on one floor, he would go to another floor. And you know, see, if he likes the food there and he would eat that. So he was a family member. He was not restricted. He did not have to ask for permission to come in. It was a three-unit house where we have internal access to each other place. So he was free to go to anybody whenever he wanted.
THE COURT: Does your brother, MUG, have access to all three units of the house?
THE WITNESS: In a sense. So adults, they are —they respect each other's privacy. It is the children who have access, you know. That they don't need to ask. He was only five years old when he left. (tr at 60-61 [June 5, 2024]).
KG was questioned regarding the support system for the Defendant by the nine other family members residing in the same residence as the Defendant.
THE COURT: Does MUG, the defendant, eat food from your home?
THE WITNESS: Only when I offered him, yes.
THE COURT: Does he eat food from your father's home?
THE WITNESS: When they offer him, yes.
THE COURT: How frequently do you offer him?
THE WITNESS: For example, if there is a special occasion, if we have something special cooked in the house, it is our tradition to share with the neighbors and with the family members and/or any friends.
THE COURT: How frequently does the defendant eat with your father?
THE WITNESS: Probably once a week or twice a week at this point. He's paying our sister and to cook for him so —
THE COURT: Does the defendant do any odd jobs around the house?
THE WITNESS: He helps our family father with the tasks that he's 77 years old. So there are certain things he cannot do; for example, mow the lawn, for example, you know, clean leaves during the fall, clean the snow, and all that, so he helps him out.
THE COURT: When the defendant does this sort of work, does he receive any compensation?
THE WITNESS: He doesn't have an established compensation like that, but he does receive other favors. He used to, for example, our father used to pick up ZAK from school. They used to exchange favors like that.
THE COURT: Does he receive any financial?
THE WITNESS: No, there is no financial. (tr at 61-62 [June 5, 2024]).
THE COURT: I'm more interested in financial contribution. Let me ask the question. So how much financial contributions have been received by the defendant, from you and your husband in the last two years?
THE WITNESS: Only $500, which I leant him and he paid back.
THE COURT: No more than that?
THE WITNESS: No more than that.
THE COURT: If you know, how much money has your father provided the defendant since this action started?
THE WITNESS: Okay. So on, for example, special occasions on or so, maybe $100 [*5]occasional, Other than in terms of a commitment.
THE COURT: What about in terms of compensation for odd jobs around the house?
THE WITNESS: There is no.
THE COURT: To your knowledge?
THE WITNESS: There is no established agreement you do that job, I pay that.
THE COURT: I'm asking you.
THE WITNESS: To my knowledge he has not. (tr at 63 [June 5, 2024]).
IV. Equitable Distribution Fidelity 401(k) account
"Equitable distribution law does not mandate an equal division of marital property[.]" (see Jones v Jones, 182 AD3d 586 [2d Dept 2020] quoting Culen v Culen, 157 AD3d 926 [2d Dept 2018]; Scaramucci v Scaramucci, 140 AD3d 848 [2d Dept 2016]). "The equitable distribution of marital assets must be based on the circumstances of the particular case and the consideration of a number of statutory factors." (see Jones v Jones, 182 AD3d 586 [2d Dept 2020] quoting Culen v Culen, 157 AD3d 926 [2d Dept 2018] citing Domestic Relations Law § 236 [B] [5] [d]). "Those factors include: the income and property of each party at the time of marriage and at the time of commencement of the divorce action; the duration of the marriage; the age and health of the parties; the loss of inheritance and pension rights; any award of maintenance; any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of marital property by the party not having title; and any other factor which the court shall expressly find to be just and proper[.]" (see Silvers v Silvers, 197 AD3d 1195 [2d Dept 2021]; quoting Taylor v Taylor, 140 AD3d 944 [2d Dept 2016]; Halley-Boyce v Boyce, 108 AD3d 503 [2d Dept 2013]; citing Domestic Relations Law § 236 [B] [5] [d]).
"The factors a court must consider in distributing marital property are set forth in Domestic Relations Law § 236 [B] [5] [d]. 'In fashioning an award of equitable distribution, the Supreme Court is required to discuss the statutory factors it relied upon in distributing marital property[.]'" (see Morille-Hinds v Hinds, 87 AD3d 526 [2d Dept 2011]; quoting Spera v. Spera, 71 AD3d 661 [2d Dept 2010]; quoting Milnes v. Milnes, 50 AD3d 750 [2d Dept 2008]).
Where health of both parties is not at issue, and "where both spouses equally contribute to the marriage which is of long duration, a division should be made which is as equal as possible[.]" (see Smith v. Smith, 162 AD2d 346 [1st Dept 1990]; Flom v Flom, 170 AD3d 440 [1st Dept 2019]).
"When both spouses equally contribute to a marriage of long duration, the division of marital property should be as equal as possible; however, equitable distribution does not necessarily mean equal distribution[.]" (see Spencer-Forrest v Forrest, 159 AD3d 762 [2d Dept 2018].
"Although in a marriage of long duration, where both parties have made significant contributions to the marriage, a division of marital assets should be made as equal as possible. . . there is no requirement that the distribution of each item of marital property be made on an equal basis[.]" (see Baron v Baron, 71 AD3d 807 [2d Dept 2010).
"Marital property must be distributed equitably between the parties, considering the circumstances of the particular case and a number of statutory factors[.] The trial court is vested with broad discretion in making an equitable distribution of marital property[.]" (see Eschemuller v Eschemuller, 167 AD3d 983 [2d Dept 2018]).
The Court has "adhered to the principle that both parties in a matrimonial action are entitled to fundamental fairness in the allocation of marital assets, and that the economic and noneconomic contributions of each spouse are to be taken into account." (see Holterman v Holterman, 3 NY3d 1 [2004]). In determining equitable distribution, the Court further took into consideration all relevant factors including, "the gross disparity in the parties' current and probable future incomes" and "husband's good health in contrast to wife's chronic health difficulties[.]" (see id).
The testimony of the Plaintiff and Defendant reflect that both parties worked during the marriage and contributed to the household. Plaintiff's income is slightly more modest than the Defendant's income. Plaintiff testified that she is receiving assistance from her brother in the range of from $800.00 to $1,000.00 per month. Defendant has received loans from his family for his legal expenses and is probably receiving additional support from his family as well.
Accordingly, the Fidelity 401(k) account, which Defendant testified had a commencement date balance of $3,500.00 and which he further testified that he liquidated in October 2023, shall be divided and on a pro rata basis with Plaintiff receiving a pro rata share of 50% and Defendant's receiving a pro rata share of 50%. Defendant is ORDERED to pay to Plaintiff $1,750.00 [ONE THOUSAND SEVEN HUNDRED AND FIFTY DOLLARS AND NO CENTS] as and for Plaintiff's 50% pro rata share of the Defendant's improperly liquidated Fidelity 401(k) account within 30 days.
V. Imputation of Income
"Income shall mean income as defined in the child support standards act and codified in section two hundred forty of this article and section four hundred thirteen of the family court act[.]" (see Domestic Relations Law § 236 [B] [5-a] [b] [4]).
Domestic Relations Law § 240 [1-b] [b] [5] provides as follows:
(5) "Income" shall mean, but shall not be limited to, the sum of the amounts determined by the application of clauses (i), (ii), (iii), (iv), (v) and (vi) of this subparagraph reduced by the amount determined by the application of clause (vii) of this subparagraph:
(i) gross (total) income as should have been or should be reported in the most recent federal income tax return. If an individual files his/her federal income tax return as a married person filing jointly, such person shall be required to prepare a form, sworn to under penalty of law, disclosing his/her gross income individually;
(ii) to the extent not already included in gross income in clause (i) of this subparagraph, investment income reduced by sums expended in connection with such investment;
(iii) to the extent not already included in gross income in clauses (i) and (ii) of this subparagraph, the amount of income or compensation voluntarily deferred and income received, if any, from the following sources:
(A) workers' compensation,
(B) disability benefits,
(C) unemployment insurance benefits,
(D) social security benefits,
(E) veterans benefits,
(F) pensions and retirement benefits,
(G) fellowships and stipends,
(H) annuity payments, and
(I) alimony or maintenance actually paid or to be paid to a spouse who is a party to the instant action pursuant to an existing court order or contained in the order to be entered by the court, or pursuant to a validly executed written agreement, in which event the order or agreement shall provide for a specific adjustment, in accordance with this subdivision, in the amount of child support payable upon the termination of alimony or maintenance to such spouse; provided, however, that the specific adjustment in the amount of child support is without prejudice to either party's right to seek a modification in accordance with subparagraph two of paragraph b of subdivision nine of part B of section two hundred thirty-six of this article. In an action or proceeding to modify an order of child support, including an order incorporating without merging an agreement, issued prior to the effective date of this subclause, the provisions of this subclause shall not, by themselves, constitute a substantial change of circumstances pursuant to paragraph b of subdivision nine of part B of section two hundred thirty-six of this article.
(iv) at the discretion of the court, the court may attribute or impute income from, such other resources as may be available to the parent, including, but not limited to:
(A) non-income producing assets,
(B) meals, lodging, memberships, automobiles or other perquisites that are provided as part of compensation for employment to the extent that such perquisites constitute expenditures for personal use, or which expenditures directly or indirecly [indirectly]* confer personal economic benefits,
(C) fringe benefits provided as part of compensation for employment, and
(D) money, goods, or services provided by relatives and friends;
"The court may impute income to a party based on his or her employment history, future earning capacity, educational background, or money received from friends and relatives[.]" (see id quoting Duffy v Duffy, 84 AD3d 1151 [2d Dept 2011]; citing Matter of Rohme v Burns, 92 AD3d 946 [2d Dept 2012]; Wesche v Wesche, 77 AD3d 921 [2d Dept 2010]).
"Where a party's account is not believable, the court may impute a true or potential income higher than alleged[.]" (see id quoting Wesche v Wesche, 77 AD3d 921 [2d Dept 2010]; citing Duffy v Duffy, 84 AD3d 1151 [2d Dept 2011]). "The court has considerable discretion in determining whether income should be imputed to a party and the court's credibility determinations are accorded deference on appeal[.]" (see id quoting Matter of Monti v DiBedendetto, 151 AD3d 864 [2d Dept 2017]; citing Matter of Kiernan v Martin, 108 AD3d 767 [2d Dept 2013]).
"The factfinder's determination concerning the imputation of income to an obligor spouse is almost always based on the resolution of credibility, and therefore, is given great deference on appeal" (see Qazi v Qazi, 220 AD3d 660 [2d Dept 2023] quoting Sufia v Khalique, 189 AD3d 1499 [2d Dept 2020]).
Plaintiff has raised the issue as to whether the Defendant should have additional income imputed to him based on the alleged support he receives from his family. There is credible testimony that Defendant was provided with a loan in the amount of $6,500.00 from his family for the purpose of retaining counsel there is no direct evidence that Defendant is receiving ongoing financial support from his family. The evidence does not demonstrate that there is any specific relative or relatives that are providing ongoing direct financial support to the Defendant. [*6]Accordingly, in its discretion, the Court declines to impute any additional income to the Defendant.
VI. Child Support
A parent has an obligation to provide support for his or her child's basic needs, an obligation which is addressed in Domestic Relations Law § 240 [1-b] [c] [1], [2]." (see Cimons v Cimons, 53 AD3d 125 [2d Dept 2008]).
"The Child Support Standards Act (Domestic Relations Law § 240 [1-b] [hereinafter CSSA]) provides 'a precisely articulated, three-step method for determining child support' (citing Elias v Elias, 101 AD3d 938, [2d Dept 2012]; quoting Matter of Cassano v Cassano, 85 NY2d 649 [1995]). This three-step process includes (1) computing a combined parental income, (2) multiplying that income, up to a certain income cap, by a specific percentage, and (3) determining the amount of income that should be considered for child support purposes if the combined parental income exceeds the income cap (Matter of Cassano v Cassano, 85 NY2d 649 [1995])." (see Boltz v Boltz, 178 AD3d 656 [2d Dept 2019]).

Plaintiff

Defendant

Gross Income

$7,200.00

$19,000.00

Estimated Social Security Tax

($446.40)

($1,178.00)

Estimated Medicare Tax

($104.40)

($275.50)

Estimated New York City Tax

($0.00)

($275.58)

Adjusted CSSA Income

$6,649.20

$17,270.92

Combined Parental Income

$23,920.12

Applicable Child Support Percentage

17%

Parental Annual Child Support Obligation

$4,066.42

Each Parent's Share of Combined Parental Income

28%

72%

Annual Pro Rata Shares of Child Support up to the Cap

$1,130.36

$2,936.06

[*7]Monthly Pro Rata Shares of Child Support up to the Cap

$94.20

$244.67

Pursuant to the United State Health and Human Services poverty guidelines for 2024 the poverty guideline for a family/household of one is $15,060.00. (United State Health and Human Services Office of the Assistant Secretary for Planning and Evaluation Poverty Guidelines, https://aspe.hhs.gov/topics/poverty-economic-mobility/poverty-guidelines/ [last accessed Aug. 27, 2024]).
"Where, as here, 'the annual amount of the basic child support obligation would reduce the non-custodial parent's income below the poverty income guidelines amount . . . the basic child support obligation shall be twenty-five dollars per month' (Family Ct Act § 413 [1] [d]), unless the court finds that such basic child support obligation 'is unjust or inappropriate, which finding shall be based upon consideration of the [factors set forth in Family Ct Act § 413 [1] [f]]'" (see Matter of Paderno v Shvetsova, 126 AD3d 982 [2d Dept 2015]).
Here the Court has not found that the Defendant is receiving sufficient direct support from his family members sharing the same residence as to warrant the imputation of additional income, however, the Court has considered the factors provided in Family Ct Act § 413 [1] [f], specifically the assistance the Defendant receives by living in a residence owned by the Defendant's father and populated by nine members of his immediate family, who as his sister testified when questioned whether they have contributed financially to assist Defendant, "[O]ur family comes from Pakistan. We are a very family-oriented society. So when one part of the family like our family member is ever in need, the other family members are always there for him or her. So financially." (tr at 60, lines 6-10 [June 5, 2024]).
Defendant's sister further testified regarding assistance to the Defendant from the Defendant's father, "So the way it works is that because he's a father and nature of our joint-family system is as such, if a family member needs money or if the family member is in need, the other family members do occasionally help sometimes. It is in the form of a money." (tr at 62-63 [June 5, 2024]).
The Court, having considered the Defendant's access to limited financial assistance from his family, further has considered the Defendant's consent on September 18, 2023 to provide weekly to the child support, pendente lite, in the amount of $150.00 per week (NY St Cts Filing [NYSCEF] Doc No. 31), the Defendant's inability to pay that amount, and that the CSSA guideline amount of child support of $244.67 monthly or $2,936.06 annually would bring the Defendant below the poverty guidelines for 2024. According, after having considered all the foregoing factors, in the discretion of the Court, child support is GRANTED to the Plaintiff and commencing on September 1, 2024, Defendant is ORDERED to pay child support to the Plaintiff in the monthly sum of $150.00 [ONE HUNDRED AND FIFTY DOLLARS AND NO CENTS]; and it is further,
ORDERED that all the child's uncovered and unreimbursed health expenses, including but not limited to hospital, medical, prescription, psychological, dental, orthodontic, optical, and related health care expenses shall be divided on a pro-rata basis. Plaintiff is responsible for 28% of all the child's uncovered and unreimbursed health expenses and the Defendant is responsible for 72% of all the child's uncovered and unreimbursed health expenses.
VII. Counsel Fees
Plaintiff seeks the Defendant to pay Plaintiff's counsel fees in the amount of $11,500.00 pursuant to the amount of time expended to complete the matrimonial action. Plaintiff's total legal fees incurred is $16,250.00 and the Court has previously Ordered counsel fees paid in the amount of $5,000.00, pendente lite, on October 4, 2023. (NY St Cts Filing [NYSCEF] Doc Nos. 41).
Pursuant to Domestic Relations Law § 237 [a], "There shall be a rebuttable presumption that counsel fees shall be awarded to the less monied spouse. In exercising the court's discretion, the court shall seek to assure that each party shall be adequately represented and that where fees and expenses are to be awarded." "An award of reasonable counsel fees in a matrimonial action is a matter within the discretion of the trial court[.]" (see Guzzo v Guzzo, 110 AD3d 765 [2d Dept 2013] citing Domestic Relations Law § 237; De Cabrera v. Cabrera-Rosete, 70 NY2d 879 [1987]; Quinn v Quinn, 73 AD3d 887 [2d Dept 2010]).
"For matrimonial actions such as this one, commenced on or after October 12, 2010, there is a statutory 'rebuttable presumption that counsel fees shall be awarded to the less monied spouse[.]'" (see Weidman v Weidman, 162 AD3d 720 [2d Dept 2018] quoting Domestic Relations Law § 237 [a]; citing Teaney v. Teaney, 138 AD3d 1301 [3rd Dept 2016]; Vantine v Vantine, 125 AD3d 1259 [3rd Dept 2018]). "[I]n exercising its discretionary power to award counsel fees, a court should review the financial circumstances of both parties together with all the other circumstances of the case[.]" (see id quoting De Cabrera v Cabrera-Rosete, 70 NY2d 879 [1987]).
In exercising its discretionary power to award counsel fees, the court has reviewed the financial circumstances of both parties together with all the other circumstances of the case, including the relative merit of the parties' positions, as well as the tactics of the Defendant in unnecessarily prolonging the litigation. (see Franco v Franco, 97 AD3d 785 [2d Dept 2012]; citing De Cabrera v Cabrera-Rosete, 70 NY2d 879 [1987]; Powers v Wilson, 56 AD3d 639 [2d Dept 2008]; Prichep v Prichep, 52 AD3d 61 [2d Dept 2008]).
The Court find that neither party delayed the proceedings nor engaged in unnecessary litigation to any greater extent than did the other party. As testified to in the proceedings, Defendant has an annual gross income of $19,000.00 and the Plaintiff has an annual gross income of $7,200.00. Both parties receive direct or indirect financial and/or nonfinancial assistance from their families. While both parties are of limited means, Defendant is the monied spouse.
Therefore, and based upon the foregoing, the billing statements provided by Plaintiff (NY St Cts Filing [NYSCEF] Doc No. 90), the amounts previously awarded to the Plaintiff as counsel fees, pendente lite, the length of the proceedings, and Lloyd D. Thompson, Esq.'s hourly rate, this Court finds it reasonable under the circumstances for the Plaintiff as the less monied spouse to receive from the Defendant counsel fees in the sum of $7,500.00 [SEVEN THOUSAND DOLLARS NO CENTS] to be paid directly to Plaintiff's counsel, LLOYD D. THOMPSON, ESQ. within 30 days.
Decision and Order after Trial
IN SUMMARY, IT IS HEREBY ORDERED AS FOLLOWS:
ORDERED that the Defendant pay to the Plaintiff the sum of $1,750.00 [ONE THOUSAND SEVEN HUNDRED AND FIFTY DOLLARS AND NO CENTS] as and for Plaintiff's 50% pro rata share of the Defendant's improperly liquidated Fidelity 401(k) account within 30 days; and it is further,
ORDERED that payment to the Plaintiff of any equitable distribution by the Defendant shall be made by bank check payable to the Plaintiff and provided to Plaintiff's counsel, Lloyd D. Thompson, Esq.; and it is further,
ORDERED that commencing September 1, 2024, Defendant shall pay child support to thePlaintiff in the monthly sum of $150.00 [ONE HUNDRED AND FIFTY DOLLARS AND NO CENTS]; and it is further,
ORDERED that Plaintiff's counsel, Lloyd D. Thompson, Esq., shall submit within 20 days hereof via NYSCEF a proposed order with notice of settlement or waiver of notice for the collection of child support through the New York SCU; and it is further,
ORDERED that all the child's uncovered and unreimbursed health expenses, including but not limited to hospital, medical, prescription, psychological, dental, orthodontic, optical, and related health care expenses shall be divided on a pro-rata basis. Plaintiff is responsible for 28% of all the child's uncovered and unreimbursed health expenses and the Defendant is responsible for 72% of all the child's uncovered and unreimbursed health expenses; and it is further,
ORDERED that Defendant shall pay Plaintiff's counsel fees directly to Plaintiff's counsel, LLOYD D. THOMPSON, ESQ. in the sum of $7,500.00 [SEVEN THOUSAND DOLLARS NO CENTS] within 30 days; and it is further,
ORDERED that Plaintiff's counsel, Lloyd D. Thompson, Esq., shall prepare and submit via NYSCEF with notice of settlement or waiver of notice proposed findings of fact and conclusions of law and a proposed Judgment of Divorce within 20 days hereof; and it is further,
ORDERED, that the Clerk of the Court shall enter judgment accordingly.
The foregoing shall constitute the Decision and Order of this Court after trial. Dated: August 28, 2024
Staten Island, New York
E N T E R,
HON. RONALD CASTORINA, JR.
JUSTICE OF THE SUPREME COURT